UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MIRIAM SPRINKLE,

                 Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

                 Defendant.

Case No. 3:13-cv-05313-RBL-KLS

REPORT AND RECOMMENDATION

Noted for June 6, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ('SSI') benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On January 16, 2002, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning October 12, 2001. See ECF #13, Administrative Record ('AR') 15. Both applications were denied upon initial administrative review and on reconsideration. See id. A hearing was held before an

REPORT AND RECOMMENDATION - 1

administrative law judge ('ALJ') on March 23, 2004, at which plaintiff appeared and testified, as did two medical experts and a vocational expert. See AR 32. In a decision dated November 27, 2004, the ALJ determined plaintiff to be not disabled. See AR 32-37.

On October 3, 2005, the Appeals Council granted plaintiff's request for review of the ALJ's decision, and remanded the matter for further administrative proceedings in part because the hearing tape could not be located. See AR 43-44. On remand a new hearing was held before the same ALJ on April 6, 2006, at which plaintiff appeared and testified, as again did two medical experts. See AR 15, 520-43. In a decision dated June 29, 2006, the ALJ once more determined plaintiff to be not disabled. See AR 15-22. Although that decision was affirmed by the Appeals Council on July 7, 2007 (see AR 7), this Court remanded the matter on November 15, 2007, because again hearing tapes could not be located (see AR 594-95, 601, 1008).

On remand to a different ALJ, plaintiff appeared and testified at a third hearing held on May 12, 2008, as did a lay witness and a vocational expert, and appeared and testified at a fourth, supplemental hearing held on September 23, 2008, as did a vocational expert. See AR 895-989. In a decision dated October 28, 2008, that ALJ found plaintiff to be not disabled as well. See AR 560-72. The Appeals Council affirmed the ALJ's decision, but based on the stipulation of the parties, on September 23, 2010, this Court reversed that decision and remanded the matter for further administrative proceedings. See AR 1041-45.

On remand, a fifth hearing was held before the same ALJ, at which plaintiff appeared and testified, as did plaintiff's friend, Zita Harris, and a vocational expert. See AR 1465-1527. On April 21, 2011, that ALJ too determined plaintiff to be not disabled. See AR 1008-24. Plaintiff's request for review of that decision was denied by the Appeals Council on February 20, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security (the

REPORT AND RECOMMENDATION - 2

"Commissioner"). See AR 990; 20 C.F.R. §404.981, §416.1481. On April 24, 2013, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1. The administrative record was filed with the Court on August 7, 2013. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in rejecting the medical opinion evidence from Brett Price, ARNP; (2) in discounting plaintiff's credibility; and (3) in rejecting the lay witness evidence in the record. For the reasons set forth below, however, the undersigned disagrees that the ALJ erred as alleged and thus in determining plaintiff to be not disabled, and therefore recommends that defendant's decision be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test

requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I.   The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

REPORT AND RECOMMENDATION - 4

be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."

REPORT AND RECOMMENDATION - 5

Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff takes issue with the ALJ's following findings:

> . . . In the prior October 2008 decision, the undersigned acknowledged but discounted the multiple opinions of Brett Price, ARNP (Exhibit 9A/13). Because the updated medical evidence does not change this prior analysis, the undersigned continues to reject these opinions.

AR 1019. In that prior decision, the ALJ found in relevant part that:

> The Administrative Law Judge has also considered the short instruction statements made by Bret[t] Price, ARNP in 2005. On October 7, 2005, this nurse practitioner wrote that the claimant was in the "midst of workup and is unable to work at this time" (Ex. 28F-31). In November 2005, he wrote that a suggestion had been made that the claimant not ". . . work out of her safety due to pain medications" while she was in workup (Ex. 28F-30). In another such instruction written on January 26, 2007, Nurse Price wrote that "it will be anticipated that she will not be able t[o] work for 3-4 months of time" (Ex. 28F-28). These statements, however, do not show that the claimant was unable to work for 12 continuous months. Instead, she was advised not to work for a couple of months in 2005 and one month in 2007. Nurse Price's opinion on this matter does not merit much weight.
>
> . . .
>
> The Administrative Law Judge considered the sworn "question and answer" declaration from Nurse Practitioner Price in September 2006 in which he stated that he did not believe the claimant would miss more than three to four days a month at present (Ex. AC5-4). However, his conclusion on this matter was based on the information that the claimant provided him concerning her work absences. Thus, this "opinion" can be seen as being more from the claimant than from the nurse practitioner.

AR 570. Plaintiff argues these reasons for rejecting Nurse Price's statements and declaration are not legally sufficient. The undersigned disagrees.

First, none of Nurse Price's statements from October 2005, November 2005, and January 2007, actually contain an opinion that plaintiff would be disabled for 12 continuous months or

REPORT AND RECOMMENDATION - 6

longer. See AR 366-67, 699; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant must show he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). Plaintiff asserts Nurse Price's 2005 statements support a finding that she was unable to work for a 12-month period, in light of her testimony that she lost her job in 2004 due to missing too much work because of her impairments and the treatment she received therefor, and that she was able to return to work in 2006. But, again, there is nothing in those statements to show Nurse Price believed plaintiff to have been unable to work either prior to the dates of his statements, or that she would remain unable to work until plaintiff began working again in 2006. Indeed, plaintiff fails to explain–and the evidence in the record does not show–why she was able to return to work in 2006, but not prior thereto, despite alleging her impairments have been disabling since at least October 12, 2001.

As for the late January 2007 statement, plaintiff argues the record shows the severity of her symptoms did not abate or even worsened, and she "never attempted to return to work, so there was no need for further 'work release' notes." ECF #20, pp. 7-8. But there is no indication from that statement that Nurse Price would have found plaintiff to be unable to work for a longer period of time, even with an exacerbation of symptoms. In addition, Nurse Price found plaintiff could not work only in regard the treatment she was slated to receive for her abdominal hernia, and there is no indication that Nurse Price felt plaintiff's other condition-related symptoms to be disabling either alone or in combination with those stemming from her hernia. See AR 699. As such, while plaintiff may believe her interpretation of the evidence in the record to be correct on this issue, the ALJ's own interpretation thereof is far more reasonable.

The ALJ also properly rejected Nurse Price's September 2006 opinion regarding missing

REPORT AND RECOMMENDATION - 7

work days. A medical source's opinion premised to a large extent on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601. As discussed in greater detail below, the ALJ did not err in finding plaintiff to be less than fully credible concerning her allegations of disabling symptoms and limitations. Plaintiff argues the ALJ erred here because Nurse Price: (1) "referred to specific objective findings supporting the existence of impairments that could cause [her] symptoms" (2) "offered a complete explanation of how [her] impairments had impacted her in the past and how they could be expected to impact her functioning in the future"; and (3) she "was subsequently fired from her job for missing too much work because of her impairments." ECF #20, p. 8. None of these arguments are persuasive.

First, referring to objective clinical findings that support the existence of an *impairment* that *could* cause the symptoms alleged, is not at all the same as providing objective support for the actual work-related limitations assessed. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of impairment "says nothing about the severity of the [diagnosed] condition"). Second, although Nurse Price may have offered an explanation for those assessed limitations, that explanation was clearly premised primarily–if not solely–on plaintiff's own reports–that is, what she has told him concerning the impact of her symptoms on her ability to work–rather than specific objective clinical findings:

> . . . [S]he has had periods of time when she was unable to work, but since I have known her, those have been more related to the abdominal pain and not the back pain.
>
> . . .
>
> . . . I think that at times she is capable of performing [light-duty] work, however, she does have times where she would have exacerbations of back

REPORT AND RECOMMENDATION - 8

> pain, abdominal pain, headaches or some other symptom where she would
> have to take a couple of days off work.
>
> . . .
>
> Over just this past month, I am aware of two days that I gave her off from
> work. I do not believe [plaintiff] would miss more than three or four days a
> month present given the current level of pain control we have reached.

AR 504-05. Third, while as discussed above plaintiff did testify that she was fired from her job for missing too much work due to causes related to her impairments, again this is not objective medical evidence Nurse Price can be said to have relied on to assess the limitations that she did. Accordingly, the undersigned finds no error on the part of the ALJ here.

## II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

REPORT AND RECOMMENDATION - 9

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ discounted plaintiff's credibility in part for the following reasons:

> The claimant has fibromyalgia. While she complained of diffuse musculoskeletal tenderness when examined by Dr. Quint in April 2004 and Dr. Gaffield in August 2007, her complaints were unreliable given evidence of pain behaviors and poor effort. For instance, at the April 2004 examination, Dr. Quint reported that the claimant gave a rather poor effort throughout physical range of motion testing. Dr. Quint reported that the claimant also winced and complained of discomfort with even very light touching of the spine (Exhibit 13F/3-4). Likewise, in August 2007, Dr. Gaffield stated that it was difficult to assess the claimant because she demonstrated extreme sensitivity and hyperalgesia just to simple touch. Dr. Gaffield noted that the claimant could not even tolerate the pressure of his hand against her skin. Dr. Gaffield noted inconsistencies in her gait. When the claimant initially entered the room, she walked slowly, holding onto the door frame and furniture. Yet, when performing heel walking and heel-to-toe walking, she was able to do so normally and without having to hold onto anything (Exhibit 27F/4-5). The undersigned also notes that the claimant's presentation during her consultative evaluations with Dr. Quint and Dr. Gaffield are in marked contrast to her presentations during the general or routine musculoskeletal examinations since 2001, which document no such pain behaviors (Exhibits 11F, 17F, 24F, 25F, 28F, 32F, 34F, 38F, 39F).

AR 1014-15. Plaintiff argues these are not clear and convincing reasons for finding her to be not fully credible, because her presentation to Dr. Quint and Dr. Gaffield are consistent with findings indicative of fibromyalgia. But as defendant points out, the ALJ did not discount her credibility on the basis that she did not have fibromyalgia, but rather because of both the poor effort she exhibited and the inconsistencies in her presentations to various medical providers, both of which call into question the *severity* of the limitations she is alleging. See Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2009) (finding ALJ gave several clear and specific reasons for finding

REPORT AND RECOMMENDATION - 10

claimant to be not fully incredible, including evaluating physician's "observation that [claimant] showed 'poor effort'); Smolen, 80 F.3d at 1284 (ALJ may consider observations of physicians regarding the nature of symptoms).

Citing Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), plaintiff argues the ALJ failed to take into account the fact that neither Dr. Quint nor Dr. Gaffield suggested she exaggerated her complaints or was malingering. But as defendant notes, Ryan is inapplicable here given that the Ninth Circuit in that case was dealing with the issue of the ALJ's evaluation of medical opinion evidence, not the claimant's credibility determination. See id. at 1199-1200 ("[A]n ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his ultimate opinion with his own observations."). In any event, even if both medical sources found her to be believable– though doubtful given Dr. Quint's observations regarding "poor effort"–questions of credibility are still solely within the control of the ALJ. See Sample, 694 F.2d at 642.

Plaintiff next challenges the ALJ's following basis for discounting her credibility:

> Although the claimant has multilevel degenerative changes in the lumbar spine, there is no evidence of any frank compression (Exhibit 34F/29-30). The claimant also has some degenerative changes in the cervical spine at C4-5 and C5-6, but they are only mild to moderate in severity (Exhibit 34F/160-161). The undersigned notes that, since the alleged onset date of October 2001, the claimant has received only intermittent treatment for acute exacerbations of back and neck problems (Exhibits 11F/22, 31, 16F/31, 28F/26).

AR 1015. Specifically, plaintiff argues the ALJ downplayed the significance of her lumbar impairment. But the diagnostic studies contained in the record fail to show spinal degenerative changes that are more than mild to moderate in severity as noted by the ALJ. See AR 188-89, 193, 1185-86, 1199, 1316, 1318-19; Regennitter v. Commissioner of Social Sec. Admin., 166

REPORT AND RECOMMENDATION - 11

F.3d 1294, 1297 (9th Cir. 1998) (ALJ's determination that claimant's subjective complaints are 'inconsistent with clinical observations' can satisfy clear and convincing requirement).

In addition, failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered physician's failure to prescribe, and claimant's failure to request serious medical treatment for supposedly excruciating pain); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation). Plaintiff asserts she only sought additional treatment when her symptoms worsened. But that is the point. There is little indication of such additional treatment being sought, thereby supporting the ALJ in discounting plaintiff's credibility on this basis.

The ALJ also discounted plaintiff's credibility because:

> Although the claimant has reported a history of pseudotuor cerebri, which she has attributed as the cause of her headaches, a CT scan of her head in September 2001 was negative (Exhibit 2F/10). Likewise, a CT scan of the head in December 2006 was essentially normal (Exhibit 25F/33). When seen later that month for a consultation for her headaches, the claimant had a normal neurologic examination. Dr. Khemani suspected that the claimant's headaches were due to an overuse of narcotic medication (Exhibit 17F/26). In April 2009, an MRI of the brain revealed no evidence of any intercranial disease (Exhibit 24F/161-162). Since 2011, medical records indicate that while the claimant has intermittent flare-ups of headaches, her symptoms usually resolve with medication.

AR 1015. The undersigned agrees with plaintiff that the fact that the record fails to establish the

REPORT AND RECOMMENDATION - 12

existence of pseudomotor cerebri, or that on one occasion her headaches were suspected to be due to an overuse of narcotic medication, is not a sufficient basis for finding her to be not fully credible, given that she has been diagnosed multiple times with headaches that are not, or not clearly, related to those two causes. See AR 221, 262, 266, 398, 511-12, 687, 704-05, 1425. On the other hand, the record does largely support the ALJ in finding only intermittent flare-ups of headaches with resolution on medication, and while plaintiff asserts she experienced significant medication side effects,[2] as the ALJ pointed out, the record documents few occasions where she complained of such effects. See AR 1017[3]; see also AR 221, 229, 268, 398, 511-12, 704, 1422; Morgan, 169 F.3d at 599 (credibility may be discounted on basis of medical improvement).

      Plaintiff argues, and the undersigned agrees, that because the ALJ found abdominal pain to be a severe impairment (see AR 1011), it was inconsistent of him to find her to be not fully credible on the basis that "despite an extensive workup, doctors have been unable to determine an etiology for [her] continuing abdominal symptoms" (AR 1015). The ALJ did not err, however, in failing to expressly address plaintiff's activities of daily living or her attempts to return to work. This is because even if those factors do provide support for plaintiff's argument that she is more functionally limited than found by the ALJ, the ALJ offered other valid reasons supported by the substantial evidence in the record as discussed herein. See Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for doing so, each with "ample support in the record").

---

[2] See Erickson v. Shalala, 9 F.3d 813, 818-19 (9th Cir. 1993) (ALJ must consider impact of medication side effects on ability to work).

[3] Specifically in regard to medication side effects, the ALJ found plaintiff "testified that she experienced significant side effects from her medications," but her testimony "is not consistent with the record since January 2001, which documents only one or two occasions when she complained of side effects," and "[s]he otherwise has been able to take her medications without complication."

REPORT AND RECOMMENDATION - 13

Indeed, the ALJ provided other valid bases for finding plaintiff to be less than completely credible, which plaintiff has not specifically challenged.[4] For example, he noted that despite "a long history of COPD" and reporting that she needed to use an inhaler every day because of that condition, the evidence in the record "document[ed] minimal complaints of any problems with shortness of breath, indicating her inhalers are usually effective in treating her COPD." AR 1014, 1016; see Morgan, 169 F.3d at 599; Regennitter, 166 F.3d at 1297. The ALJ further pointed out that while plaintiff "reported having to wear gloves due to hand pain" and "stated that she often dropped things," the medical evidence in the record fails to support those claims, including the fact that the objective clinical findings were essentially normal and there is no indication that she was ever prescribed gloves. See AR 1016. The same is true in regard to her alleged need to use a cane and spend most of the day lying down, as well as her claimed inability to stand for more than five minutes at a time. See AR 1016-17. Nor does plaintiff assert any fault in terms of the ALJ's determination that she lacks credibility with respect her alleged mental impairments and limitations. See AR 1017-18.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.

---

[4] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

REPORT AND RECOMMENDATION - 14

The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

> With regard to the lay witness evidence in the record, the ALJ found in relevant part:
>
> At the hearing, Zita Harris, the claimant's friend for the past seven or eight years, reported that the claimant's boys helped out a lot at home. She reported that she also helped the claimant with some household chores, including cooking, grocery shopping, doing laundry, and cleaning. She stated that the claimant typically lay in bed. She reported that the claimant's moods depended on her level of pain. She stated that, on bad days, the claimant cried a lot. She stated that the claimant was in chronic pain, often groaning when she moved. She noted that the claimant had some memory problems. She stated that the claimant was slow on her feet. She reported that the claimant's hands hurt a lot, and that she had to wear gloves all of the time. She stated that she had difficulty holding onto things like grabbing a coffee cup or opening up pill bottles. She testified that the claimant had difficulty even walking to the end of a block.
>
> The undersigned accords some weight to Ms. Harris's testimony, but only to the extent that it is consistent with the overall evidence. First, while the claimant has some physical limitations due to her multiple medical impairments, the objective findings are not consistent with the incapacitating lifestyle that Ms. Harris describes of the claimant. Apart from the positive findings during consultative evaluations for Social Security disability benefits, the reliability of which is undermined by evidence of pain behaviors and poor effort, the claimant has had generally benign or normal findings during routine or general examinations. The objective evidence therefore does not substantiate the claimant's pain complaints or her self-imposed standing or walking restrictions. Second, as discussed above, there is no objective evidence of any manipulative restrictions. Aside from Dr. Gaffield's evaluation in August 2007, examination records consistently document no neurologic deficits in either upper extremity. The claimant was also able to work as an administrative assistant from April 2006 to December 2006, a job that required her to write or handle small objects three to four hours per day. In addition, x-rays of the claimant's hands in June 2009 were completely unremarkable. Third, despite Ms. Harris's description of the claimant's mental symptoms, the claimant has undergone essentially no mental health treatment since the alleged onset date of October 2001. The claimant has not received any psychiatric counseling, and up until 2008, she was not even taking any psychiatric medications. Moreover, treatment notes since 2004 regularly indicate that she presented to routine examinations with normal mood and effect.

AR 1018-19. Plaintiff argues the ALJ failed to give germane reasons for rejecting the testimony

REPORT AND RECOMMENDATION - 15

of Ms. Harris. The undersigned disagrees. First, plaintiff does not challenge the ALJ in rejecting Ms. Harris's testimony on the basis that her observations of plaintiff's mental symptoms were inconsistent with the lack of mental health treatment she received. See Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (ALJ did not err in rejecting lay witness testimony in part based on claimant's failure to participate in medical treatment).

Second, plaintiff argues it was improper for the ALJ to reject the testimony of Ms. Harris on the basis that it was inconsistent with the objective medical evidence in the record concerning her physical impairments, asserting objective findings in the record "documented the existence of severe impairments that could have caused the symptoms that Ms. Harris had witnessed." ECF #20, p. 19. But even if this is so, that those symptoms *could* have been caused by the objective findings in the record does not at all mean they in fact were. Indeed, plaintiff has failed to refute the ALJ's statement regarding the "generally benign or normal" nature of those findings. AR 1019; see also AR 221, 223-25, 228-29, 262, 266, 268, 392, 395-96, 398, 705, 854, 858, 1420, 1422, 1425-26; Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (inconsistency with medical evidence constitutes germane reason); Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984) (proper to discount lay testimony that conflicts with available medical evidence).

Third, in rejecting Ms. Harris's testimony, the ALJ also relied on plaintiff's performance of a job for a number of months that required both writing and the handling of small objects for several hours a day. Lay witness testimony may be rejected if evidence of a claimant's activities is inconsistent therewith. See Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (rejection of lay witness evidence due to inconsistency with claimant's successful completion of continuous full-time coursework constituted reason germane). Plaintiff also does not challenge this stated reason for rejecting the testimony of Ms. Harris.

REPORT AND RECOMMENDATION - 16

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ properly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court affirm defendant's decision to deny benefits.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **June 6, 2014**, as noted in the caption.

DATED this 16th day of May, 2014.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 17